STATE of Minnesota, Appellant,

v.

Emanuel A. SERSTOCK, Respondent.

No. C3–86–264.

Supreme Court of Minnesota.

March 20, 1987.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Mary Magnuson, Sp. Asst. Atty. Gen., St. Paul, for appellant.

David G. Roston, Minneapolis, for respondent.

AMDAHL, Chief Justice.

Respondent Emanuel A. Serstock was indicted by a grand jury on three counts of violating the public officer misconduct statute, Minn.Stat. § 609.43(2) (1984). In a pretrial order, the trial court dismissed the indictment on the grounds that the facts alleged did not constitute an offense and that the language of the indictment was not sufficiently specific to satisfy Minn.R. Crim.P. 17.02, subd. 2, and Minn.Stat. § 628.18 (1986). The Court of Appeals affirmed the trial court decision with respect to Counts I and II, holding that those counts failed to state an offense. The Court of Appeals reversed dismissal of the third count, finding that it stated an offense under section 609.43(2), and that the language was sufficiently specific to satisfy Minnesota law. We affirm with respect to Counts I and II and reverse with respect to Count III.

Respondent was hired to serve the City of Minneapolis as deputy city attorney in the criminal division from 1975 until October 1985. As deputy city attorney, he had complete charge of prosecuting all offenses referred to the city attorney. The city attorney is responsible for prosecuting gross misdemeanors, misdemeanors, petty misdemeanors, and ordinance violations occurring in Minneapolis.

In October 1985, a grand jury returned a three-count indictment against respondent, alleging three violations of Minn.Stat. § 609.43(2). Count I alleges that respondent dismissed numerous parking tickets and dismissed or wrongfully manipulated tickets for moving violations as personal favors to Erwin Dauphin, to whom respondent was financially indebted at the time of the alleged ticket fixing. Count II alleges that respondent dismissed or wrongfully manipulated tickets for moving violations as personal favors for Stephen Wallack, to whom respondent was also indebted at the time of the alleged ticket fixing. Count III alleges that respondent dismissed or wrongfully manipulated tickets for moving violations which occurred outside the City of Minneapolis without permission of the responsible city attorney.

All three counts allege the actions exceeded respondent's lawful authority because they violated the Minnesota Code of Professional Responsibility and the Ethics Code of the Minneapolis City Attorney (City Ethics Code). The third count also alleged that respondent's actions were in excess of his statutory authority.

Respondent filed a pretrial motion to dismiss the indictment. The trial court granted respondent's motion. In summary, the order stated that the indictment did not clearly or with certainty set forth charges against respondent as required by Minn. Stat. § 628.18, subds. 6 and 7 (1986); that the indictment omitted essential facts constituting the offense charged, thereby violating Minn.R.Crim.P. 17.01, subd. 2; that the indictment was insufficient to apprise defendant of the charges against him; and that the allegations in the indictment did not constitute an offense, thereby requiring dismissal under Minn.R.Crim.P. 17.06, subd. 2(2)(d).

The Court of Appeals held that Counts I and II of the indictment were properly dismissed because they did not state an offense under Minn.Stat. § 609.43(2) (1984). Specifically, the court held that the Code of Professional Responsibility could not "be used to determine the 'lawful authority' of a public attorney," and that a mere allegation of violating the ethics code of the city attorney's office also did not state an offense under section 609.43(2) because some actions violating the ethics rules did not necessarily rise to the level of a criminal offense. *State v. Serstock*, 390 N.W.2d 399, 403–04 (Minn.App.1986).

With respect to Count III of the indictment, the Court of Appeals held that since it alleged actions in excess of *statutory* authority, Count III stated an offense under section 609.43(2). *Id.* at 404–05. The Court of Appeals also determined that Count III stated specific essential facts sufficient to satisfy the requirements of Minn. R.Crim.P. 17.02, subd. 2, and Minn.Stat. § 628.18 (1986). The Court of Appeals noted particularly that respondent had access to all grand jury materials to the indictment and had access to discovery; accordingly, the court found that any lack of specificity was not prejudicial. *Id.* at 405.

The first issue we must address is whether the indictments allege an offense under Minn.Stat. § 609.43(2), which states:

A public officer or employee who does any of the following, for which no other sentence is specifically provided by law, may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $5,000, or both:

\* \* \* \* \* \*

(2) In his capacity as such officer or employee, does an act which he knows is in excess of his lawful authority or which he is forbidden by law to do in his official capacity \* \* \*.

To determine whether respondent's actions violated the statute, it is necessary to determine what guidelines define "lawful authority" under the statute. Respondent argues that the criminal statute should be narrowly and strictly construed, and also argues that a decision declaring any ethics violation by a public attorney to also be a criminal violation would create too great an onus on public officials. The state argues that the Code of Professional Responsibility and the City Ethics Code define the outer limits of "lawful authority" of a city prosecutor and may be used as guidelines for the misconduct statute.

The Minnesota Code of Professional Responsibility (MCPR) was the ethical guideline for attorneys during the period of respondent's alleged activities.[1] Contained in the MCPR are disciplinary rules which, according to the preamble to the MCPR, "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Similarly, the Minneapolis Code of Public Service Ethics Manual provides ethical guidelines for attorneys in the city attorney's office. Violation of the Ethics Manual provides cause for disciplinary action as well.

▪ Although both guidelines are undoubtedly effective for determining professional discipline, we agree with the Court of Appeals that neither the Code of Professional Responsibility nor the City Ethics Code were intended to delineate "lawful authority" for purposes of a criminal statute. The Code of Professional Responsibility was intended solely to provide guidelines for professional discipline. *Cf. In re Kraemer*, 361 N.W.2d 402 (Minn.1985) (purpose of disciplinary actions is not to punish but to protect public and deter future misconduct). In any case, where doubt exists as to legislative intent of a penal statute, doubts must be resolved in favor of the defendant. *See State v. Haas*, 280 Minn. 197, 200, 159 N.W.2d 118, 121 (1968).

We also agree with the Court of Appeals analysis that the City Ethics Code prohibits activities that the legislature could not have intended to include as crimes under § 609.43(2). Rude treatment, loss of impartiality, engaging in other employment without giving notice, and publicly commenting on office policy are all actions barred by the City Ethics Code, but certainly are not actions intended to be criminal offenses under the official misconduct statute. In short, adopting the Code of Professional Responsibility and the City Ethics Code as guidelines to the official miscon-

---

**1.** The Minnesota Code of Professional Responsibility was replaced by the Rules on Professional Conduct, effective September 1, 1985.

duct statute would extend those provisions beyond their intended purposes.[2]

■ We hold that "lawful authority" as used in Minn.Stat. § 609.43(2) is determined by statutes which define or describe a public official's authority.[3] We believe this approach will best assure that the official misconduct statute satisfies the general principles of the Criminal Code which seek to "protect the individual against the misuse of the criminal law by fairly defining the acts and omissions prohibited * *." Minn.Stat. § 609.01, subd. 1(2) (1986).

The approach we adopt is consistent with this court's previous holding in *State v. Wedge*, 24 Minn. 150 (1877). Defendant County Attorney Wedge was indicted for misbehavior and malfeasance in office. The indictment alleged that defendant aided the escape of a person in custody by approving an unauthorized bail bond and directing the sheriff to release the person. This court rejected the challenge to the indictment, stating:

> How a defendant, arrested under an indictment, shall be let to bail, is prescribed *by statute*. It gives no authority in the matter to the county attorney. * The approval of the bond, and direction to the officer to release the prisoner, were beyond the defendant's official authority.

24 Minn. at 153 (emphasis added).

Similarly, in *State v. Green*, 376 A.2d 424 (Del.Super.Ct.1977), a Delaware Superior Court dismissed indictments against a state bank commissioner for violating Delaware's official misconduct statute which bars a public servant from knowingly refraining from performing a duty "clearly

inherent in the nature of his office." 376 A.2d at 426. The court stated:

> The meaning of the phrase does not include the duty of avoiding violation of unspecified conflict-of-interest or other ethical standards. Such an interpretation would defeat the legislative policy that officers and employees of the State must have the benefit of specific standards to guide their conduct and should be subject to criminal penalties only for violation of those standards that are found to be especially vital to government. Specification of such ethical standards and appropriate sanctions for their violation is a legislative function, not one to be performed by a court in a prosecution for official misconduct.

*Id.* at 428.

The requirement that "lawful authority" be defined by statute is also consistent with the recent case of *State v. Ford*, 397 N.W.2d 875 (Minn.1986), in which we held that the defendant schoolteacher violated the official misconduct statute. We stated that "Ford knew that sexual conduct with students by a teacher is forbidden by law because it is grounds for immediate discharge as immoral conduct and conduct unbecoming a teacher under Minn.Stat. § 125.12, subd. 8 (1984)." 397 N.W.2d at 880.

Applied to the present case, Counts I and II of the indictment allege no violation of any statutory limit on respondent's authority. Accordingly, we affirm dismissal of those counts for failure to state an offense under § 609.43(2). Count III, however, does allege a violation of statutory authori-

---

**2.** We are also concerned that adopting the Code of Professional Responsibility or the Rules on Professional Conduct as a guideline for the misconduct statute would disrupt this court's sole authority to determine attorney discipline. Rules on Lawyers Professional Responsibility, Rule 19, states that a lawyer's criminal conviction is conclusive evidence he committed the conduct for which he was convicted. In most criminal cases, a court would not have to find an ethical violation to determine criminal conduct. Under the interpretation of the misconduct statute as offered by the state, an ethical violation forms the very basis for the criminal indictment. The court would therefore have to

determine if an ethics violation occurred, and that decision would be binding on the Lawyers Professional Responsibility Board.

**3.** The legislature has promulgated several statutes which define the general authority of various public officials. *See, e.g.,* Minn.Stat. § 198.-06 (1986) (guidelines for administrators of veterans homes); Minn.Stat. § 352.03 (1986) (duties of directors to Minnesota state retirement system); Minn.Stat. § 419.06 (1986) (duties of police civil service commission members).

ty; that count therefore does state an offense under the official misconduct statute. We must next determine whether the indictment is sufficient or whether it suffers from some other defect.

The Court of Appeals found Count III of the indictment sufficiently specific to meet the requirements imposed by Minn.R. Crim.P. 17.02, subd. 2, and Minn.Stat. § 628.18 (1986).[4] Minn.R.Crim.P. 17.02, subd. 2, declares:

> An indictment shall contain a written statement of the essential facts constituting the offense charged. It shall be signed by the foreman of the grand jury.

Minn.Stat. § 628.18 (1986) states in relevant part:

> The indictment shall be sufficient if it is drafted in accordance with the provisions of Rule 17.02 of the Rules of Criminal Procedure and if it can be understood therefrom:
>
> \* \* \* \* \* \*
>
> (6) That the act or omission charged as the offense is clearly and distinctly set forth, in ordinary and concise language, without repetition;
>
> (7) That the act or omission charged as the offense is stated with such a degree of certainty as to enable to the court to pronounce judgment, upon a conviction, according to the right of the case.

■ In *State v. Oman*, 265 Minn. 277, 121 N.W.2d 616 (1963), this court, quoting *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1961), set forth the test for whether an indictment contained essential facts:

> " \* \* \* These criteria are, first, whether the indictment 'contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet," ' and, secondly, ' "in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." \* \* \* ' "

*Id.* at 281, 121 N.W.2d at 620. Thus, the indictment must contain the elements of the offense charged. Official misconduct occurs when a public officer, in his official capacity, does an act he knows is in excess of his lawful authority. The indictment against respondent alleges that in his capacity as deputy city attorney he knowingly committed acts in excess of his lawful authority. Specifically, Count III alleges that respondent dismissed or manipulated tickets for moving violations which occurred outside of Minneapolis in excess of his statutory authority. The indictment thus sets forth the elements of the crime of official misconduct.

■ The indictment must also apprise defendant of what he must be prepared to meet. This language requires that defendant be informed of what acts he has committed which constitute the crime. Respondent asserts on appeal that the indictment fails to provide this essential information because the indictment fails to describe the tickets involved, the statute allegedly violated, and the number of tickets in question. We find respondent's argument persuasive. Although Count III informs respondent of the charge that he acted in excess of his statutory authority, the indictment fails to specify which statutory limitation of authority that respondent allegedly exceeded. The Court of Appeals opinion cited Minn.Stat. § 488A.10, subd. 11 (1986), as the statutory limitation on Serstock's authority which he allegedly exceeded. Neither the indictment nor any other pretrial records indicate, however, what statutory limit Serstock allegedly exceeded. He thus had no way of knowing what statutory authority he allegedly exceeded so that he could prepare a defense. We find

---

**4.** We note that this issue was not presented in *State v. Ford*, 397 N.W.2d 875 (Minn.1986). Minn.Stat. § 628.18 is inapplicable to *Ford* since defendant Ford was charged by complaint rather than by indictment. We also did not address the issue of whether the complaint against Ford failed to state essential facts, since Ford did not raise the issue on appeal. Instead, we found that the complaint alleged facts sufficient to establish probable cause against Ford in compliance with Minn.R.Crim.P. 2.01.

that respondent was prejudiced within the meaning of Minn.R.Crim.P. 17.02, subd. 3, and that Count III should have been dismissed.[5]

The state argues that any lack of specificity in the indictment is cured by discovery procedures provided by the Rules of Criminal Procedure. The Rules of Criminal Procedure do allow for discovery. The bill of particulars is abolished by Minn.R. Crim.P. 17.02, subd. 4. The comment to that subdivision states "information supplied by a bill of particulars may be obtained by discovery under Rules 9 or 7.03." Rule 9.01 allows "defense counsel to inspect and reproduce such [grand jury] witnesses', relevant written or recorded statements and any written summaries within (the prosecutor's) knowledge * * * of relevant oral statements made by such witnesses * * *." In *State v. Becker*, 351 N.W.2d 923, 927 (Minn.1984), this court found that a defendant was not prejudiced by a complaint failing to state the specific time period in which multiple acts of sexual abuse allegedly occurred because defendant "availed herself of the discovery opportunities under the procedures authorized by our criminal rules."

 We think *Becker* is distinguishable. In *Becker*, we stated that the time period of an action is a material element of the offense only where the act done is unlawful during specific seasons. *See* 351 N.W.2d at 927. We are of the opinion that the discovery provisions contained in the Rules of Criminal Procedure may be used, as a bill of particulars formerly was used, to provide a defendant with specific nonessential facts not stated in the indictment. We do not, however, think that criminal discovery procedures may cure an indictment which omits essential facts. While bills of particulars are still available in the federal courts, *see* Fed.R.Crim.P. 7(f), those courts hold that the sufficiency of an indictment is irrelevant to a court's determining whether to grant a request for a bill of particulars. If the indictment is insufficient, it must be dismissed, and cannot be saved by a bill of particulars. *See Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1961) ("[I]t is a settled rule that a bill of particulars cannot save an invalid indictment."). The fact that an indictment is sufficient is not an argument against granting the bill. *See United States v. Haas*, 583 F.2d 216, 221 (5th Cir.), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1978); *United States v. Faulkner*, 53 F.R.D. 299, 300 (E.D.Wis.1971).

We agree with the concerns expressed by the trial court in the present case, which in dismissing the indictment, stated:

> The Court very strongly disagrees with the State's position that discovery can be used on behalf of the Defendant in order to determine what the nature of the charges are. It would be the Court's position that this places a very unfair burden on a person charged with a criminal offense that he should have to conduct discovery. I trust—discovery has been abused in the civil process over and over and the entire system is trying to do something to avoid those abuses—but I trust that we'll never get to the point where someone charged with a crime has to initiate discovery and go to the expense of discovery in order to find out what the person is charged with. I think that would be a fundamental injustice to require that kind of process or procedure on a person charged with a criminal offense.

5. Minn.R.Crim.P. 17.02, subd. 3, declares that errors or omissions in an indictment or a complaint shall not be grounds for dismissal "if the error or omission did not prejudice the defendant." The primary distinguishing feature between our present case and *Ford* is in prejudice to the defendant. In *Ford*, the defendant's challenge to the complaint was his claim of lack of probable cause. Subsequently, Ford entered a negotiated plea and the thorough questioning of defendant by the court and counsel prior to the acceptance of the plea demonstrated that defendant was quite aware of the charge against him and the allegations he faced. Ford did not assert, nor could he reasonably do so in face of the record, that he was prejudiced by a lack of a specific statutory citation.

In the present case, there is no doubt that the statutory authority allegedly exceeded by respondent was an essential fact constituting the offense charged. The indictment provided respondent with no indication of what statutory restriction he allegedly violated. We hold that this omission of an essential fact from the indictment constitutes a failure to meet the requirements of Minn.R.Crim.P. 17.02, subd. 2, and prejudiced Serstock in his defense. Accordingly, we reverse the Court of Appeals and dismiss Count III of the indictment. We note that the state is not barred from seeking a new indictment for any alleged illegal actions not barred by the statute of limitations under Minn.R.Crim.P. 17.06, subd. 4(3).[6]

The decision of the Court of Appeals is affirmed in part, reversed in part.

---

6. We also note that the Lawyers Professional Responsibility Board is free to determine wheth- er respondent's alleged activities may warrant any disciplinary action.