*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1822**

Jonathan Nicholas Turner, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 11, 2016
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR103364

Jonathan N. Turner, Stillwater, Minnesota (pro se appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

On appeal from the denial of postconviction relief, appellant argues that (1) his sentence is illegal; (2) he received ineffective assistance of counsel; (3) he is entitled to a new trial based on newly discovered evidence; and (4) his plea is invalid. We affirm.

## FACTS

In the early morning hours of July 29, 2003, appellant Jonathan Nicholas Turner ambushed, shot, and killed a man. Appellant was charged with two counts of first-degree murder, found guilty by a jury, and sentenced to life in prison plus five years.

After filing a direct appeal of his conviction to the Minnesota Supreme Court, appellant moved to stay his appeal to pursue postconviction relief. The supreme court granted appellant's motion. Appellant filed a petition for postconviction relief, which the postconviction court denied. After appealing the denial of postconviction relief to the supreme court, appellant filed motions to reinstate his former appeal and to consolidate his appeals, which the supreme court granted.

Before the supreme court released an opinion on appellant's consolidated appeals, appellant again moved to stay and remand his appeals for postconviction proceedings, which the supreme court granted. In a negotiated plea, appellant pleaded guilty to second-degree murder in exchange for the vacation of his first-degree murder charges and the dismissal of his appeals. The district court vacated appellant's 2010 convictions and accepted appellant's guilty plea. Appellant filed a notice of dismissal with the supreme court, and the supreme court dismissed his consolidated appeals.

On March 26, 2015, appellant filed a second petition for postconviction relief and argued that he should be allowed to withdraw his plea of guilty to second-degree murder. The postconviction court denied appellant's petition. This appeal follows.

**D E C I S I O N**

A person convicted of a crime who claims that his constitutional rights were violated may file a petition for postconviction relief when direct appeal is not available. Minn. Stat. § 590.01, subd. 1 (2014). "We review a denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013) (quotation omitted). We review legal issues de novo, but our review of factual issues is "limited to whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Matakis v. State*, 862 N.W.2d 33, 36 (Minn. 2015) (quotation omitted).

Appellant makes four arguments in support of his assertion that he should be permitted to withdraw his plea: (1) his sentence is illegal; (2) he received ineffective assistance of counsel; (3) he is entitled to a new trial based on newly discovered evidence; and (4) his plea is invalid. We address each argument in turn.

## I.     Illegal sentence

Appellant argues that he was sentenced in 2013 using an incorrect criminal-history score of three, not four, so his sentence is illegal, and he is now at the mercy of the state, which may pursue the correction of his sentence at any time.[1] We disagree.

---

[1] The state was unable to obtain a copy of the sentencing worksheet used for appellant's 2013 sentencing. The state did submit a sentencing worksheet which was completed in

3

The interpretation of the sentencing guidelines and rules of criminal procedure present a legal question that we review de novo. *State v. Campbell*, 814 N.W.2d 1, 6 (Minn. 2012); *State v. Maurstad*, 733 N.W.2d 141, 146 (Minn. 2007). The state has the burden of establishing a defendant's criminal-history score. *Bolstad v. State*, 439 N.W.2d 50, 53 (Minn. App. 1989). Criminal defendants have an unwaivable right to appeal a criminal-history score regardless of whether they raised the issue below. *Maurstad*, 733 N.W.2d at 146–47. A sentence based on a miscalculated criminal-history score is unlawful and may be corrected at any time when raised by a defendant. *Id.* at 147; *see also* Minn. R. Crim. P. 27.03, subd. 9. But the state must appeal a sentence within 90-days after the entry of judgment and sentencing. Minn. R. Crim. P. 28.05, subd. 1.

While it does appear that appellant's sentence was based on an incorrect criminal-history score, appellant's argument that his sentence is illegal nevertheless lacks merit. Appellant cites *Maurstad* in support of his position. But in *Maurstad*, the criminal-history score was erroneously *higher* than it should have been and thus improperly increased Maurstad's sentence. 733 N.W.2d at 144. Conversely, the error in appellant's case resulted in an erroneously *lower* criminal-history score and a reduced sentence. *Maurstad* is therefore inapposite.

Our decision in *State v. Rock* is instructive. 380 N.W.2d 211 (Minn. App. 1986), *review denied* (Minn. Mar. 27, 1986). Rock was sentenced based on an erroneously lower criminal-history score because it excluded a felony conviction, and Rock was

---

2015 to support its response to appellant's postconviction petition. The 2015 sentencing worksheet reflects that appellant has four total criminal-history points.

aware of the omission. *Id.* at 212, 214. After Rock's sentencing, the error was brought to the district court's attention, and the district court increased Rock's sentence. *Id.* at 213. On appeal, we reversed and ordered that the original sentence be reinstated. *Id.* at 213-14. In so holding, we stated, "When appellant waived a presentence investigation report and an error in his criminal history score was discovered several months later by the [s]tate, and the [s]tate did not timely perfect a sentencing appeal, the trial court erred in imposing a more severe sentence upon resentencing." *Id.* at 214.

Here, the 90-day time period during which the state may appeal the sentence imposed on appellant has passed. Minn. R. Crim. P. 28.05, subd. 1. Thus, under *Rock*, the district court cannot impose a more severe sentence, even if the state were to seek to extend appellant's sentence.[2] Because the state is now precluded from seeking an extended sentence, there is no prejudice to appellant, and he is not entitled to withdraw his plea based on an erroneous criminal-history-score calculation, which benefitted him.

## II. Newly discovered evidence

Appellant next argues that the postconviction court erred by denying him a new trial or evidentiary hearing on his claim of newly discovered evidence. Initially, we note that this argument fails because a counseled guilty plea "has traditionally operated, in Minnesota and in other jurisdictions, as a waiver of all non-jurisdictional defects arising

---

[2] At appellant's 2013 plea hearing, the parties were in agreement that a criminal-history score of three was to be used, though the record does not explain why. The state indicated in its brief that it has no intention of seeking an extended sentence in appellant's case and seems to implicitly acknowledge its obligation to honor the terms of the plea agreement.

prior to the entry of the plea." *State v. Ford*, 397 N.W.2d 875, 878 (Minn. 1986) (citing *State v. Lothenbach*, 296 N.W.2d 854, 857 (Minn. 1980)).  Nevertheless, even though appellant's claim lacks merit, we address it because it forms the basis for his other arguments.

When determining whether to grant a new trial based on newly discovered evidence, a defendant must prove that the evidence: (1) was not known to appellant or his counsel during trial; (2) could not have been discovered through due diligence before trial; (3) is not cumulative, impeaching, or doubtful; and (4) would probably produce an acquittal or more favorable result.  *Bobo v. State*, 860 N.W.2d 681, 684 (Minn. 2015).  Appellant bears the burden of establishing that facts warranting relief exist by a fair preponderance of the evidence.  *Williams v. State*, 692 N.W.2d 893, 896 (Minn. 2005).  And appellant must establish each of the four prongs in order to be entitled to relief.  *Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013).

In a well-reasoned order, the postconviction court denied appellant a hearing based on his claim of newly discovered evidence because it found that appellant failed to establish that he did not know about this evidence, an eyewitness, at the time of trial.  Appellant concedes on appeal that he knew of this witness at the time of trial.  Appellant alleges, however, that the witness was previously unwilling to come forward and that appellant was unsure what the witness would say.  Uncertainty as to whether a witness will come forward and what that witness's testimony will be does not establish that the witness was not known to appellant or his counsel during trial.  *Fort v. State*, 829 N.W.2d 78, 83 (Minn. 2013) (concluding that, when an affidavit established that the witness was

with Fort on the night of the incident, Fort could not prove that the evidence was not known to him at the time of trial). Thus, the postconviction court did not abuse its discretion by denying appellant's postconviction petition based on his failure to establish the first prong of the newly discovered evidence test. We therefore need not consider the other prongs.

**III.    Ineffective assistance of counsel**

Appellant contends that he received ineffective assistance of counsel based on his attorney's failure to (1) adequately investigate appellant's criminal-history score and (2) advise appellant about the consequences of taking the plea bargain, particularly when his attorney was aware of the existence of a potential witness. We are not persuaded.

We review ineffective-assistance-of-counsel claims de novo. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). Ineffective-assistance-of-counsel claims arising out of the plea process involve a two-part test. *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 369 (1985)). First, appellant must show that "counsel's performance was deficient" by establishing that counsel's representation fell below an objective standard of reasonableness. *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). Second, appellant must show that his counsel's performance prejudiced his defense. *Id.* We need not address both prongs if one is dispositive. *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013).

## A.    Criminal-history score

Appellant alleges that his attorney's failure to adequately investigate his criminal-history score resulted in an "illegal sentence," and the state may, at any time, pursue adding three years to his sentence.  As discussed previously, the state may not unilaterally revoke appellant's plea and seek an extended sentence as a result of an erroneous criminal-history score.  Moreover, the record reflects that appellant's counsel secured a more favorable sentence for appellant than that to which he was entitled based on his criminal-history score.  Thus, appellant's argument that his counsel's performance was defective based on the erroneous criminal-history score calculation fails.

## B.    New witness and advice regarding plea

Appellant next asserts that his attorney improperly advised him to take the plea agreement knowing that a potential exculpatory witness existed.  Decisions regarding which witnesses to call at trial and whether to advise a client to plead guilty constitute trial strategy.  *State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986) (interviewing and calling witnesses); *Brown v. State*, 292 Minn. 174, 177, 193 N.W.2d 613, 616 (1972) (plea bargain).  We have "repeatedly stated that we generally will not review attacks on counsel's trial strategy." *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004).  Additionally, as previously noted, appellant was aware of this witness's existence.  Indeed, according to a letter submitted by this witness, he was standing next to appellant when the 2003 incident occurred.

In addition, the record reflects that appellant was properly advised as to the terms of the plea agreement.  Specifically, appellant acknowledged that, in exchange for

pleading guilty to second-degree murder, his first degree murder charge would be dismissed and vacated, and he waived his right to a jury trial and the presumption of innocence, among other rights. Appellant also acknowledged that accepting the plea meant that he was no longer facing a life sentence plus an additional five years and that the state would not pursue criminal charges against him in another matter. Given the severity of the consequences appellant faced with respect to the first-degree-murder charges and the uncertainty regarding the outcome of his appeal, appellant's counsel's recommendation that appellant plead guilty to second-degree murder was reasonable.

Neither of appellant's ineffective-assistance-of-counsel arguments establish that his counsel's performance was unreasonable. We therefore need not consider the second prong of the *Strickland* test, and we conclude that the postconviction court did not abuse its discretion by denying appellant postconviction relief based on his claim of ineffective assistance of counsel.

## IV.  Plea validity

Finally, appellant argues that his plea is invalid because it was inaccurate and involuntarily. We disagree.

There is no absolute right to withdraw a guilty plea, but a guilty plea must be withdrawn "upon a timely motion and proof . . . that withdrawal [of the guilty plea] is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1; *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). When a guilty plea is not accurate, voluntary, or intelligent, a manifest injustice occurs, and the plea is rendered invalid. *Theis*, 742 N.W.2d at 646; *see also Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997); *Brown v.*

*State*, 449 N.W.2d 180, 182 (Minn. 1989). "A defendant bears the burden of showing his plea was invalid. Assessing the validity of a plea presents a question of law that we review de novo." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

### A. Accurate

Appellant contends that his plea was inaccurate because he was asked only leading questions to establish the factual basis for his plea. "A proper factual basis must be established for a guilty plea to be accurate." *Theis*, 742 N.W.2d at 647 (quotation omitted). The district court typically satisfies the factual basis requirement by asking the defendant to express in his own words what happened. *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). The district court should be wary of situations in which the factual basis is established by asking a defendant only leading questions. *Ecker*, 524 N.W.2d at 717. But "a defendant may not withdraw his plea simply because the court failed to elicit proper responses if the record contains sufficient evidence to support the conviction." *Raleigh*, 778 N.W.2d at 94.

Here, sufficient evidence supports appellant's conviction. At the plea hearing, appellant admitted that he intended to pull the trigger and shoot the gun, he intended to shoot and kill the victim, the victim died because of the gunshot wounds that appellant inflicted, and appellant caused the victim's death by intentionally shooting him. Thus, appellant admitted to all of the elements of a second-degree intentional murder conviction, establishing a proper factual basis. Minn. Stat. § 609.19, subd. 1 (2014).

Appellant further asserts that he was never asked whether he claimed innocence, which violated Minn. R. Crim. P. 15.01, subd. 1(7), and that he was unable to assert his

innocence because he was asked only leading questions. A review of the plea-hearing transcript shows that appellant was asked primarily leading questions and the district court did not specifically ask appellant whether he was asserting a claim of innocence. But as previously noted, appellant admitted to committing all the elements of second-degree murder. And appellant could have asserted his innocence by responding in the negative to questions regarding any actions that he claimed were not his. Moreover, the comment to rule 15.01 recognizes that a plea may be validly entered into without strict compliance with the rule. Minn. R. Crim. P. 15.01 cmt. ("Although a failure to include all of the interrogation set forth in Rule 15.01 will not in and of itself invalidate a plea of guilty, a complete inquiry as provided for by the rule will in most cases assure and provide a record for a valid plea."). We conclude that, under the circumstances, not asking whether appellant claimed innocence did not invalidate his guilty plea.

### B. Voluntary

Appellant argues that his plea was rendered involuntary because he received ineffective assistance of counsel. When an accused is represented by counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56, 106 S. Ct. at 369 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449 (1970)). As previously discussed, appellant's counsel's advice was within the range of competence demanded of attorneys in criminal cases. Therefore, appellant's plea was not rendered involuntary on this basis.

11

Appellant also argues that his plea was not voluntary because he was not aware that a witness would later come forward with "critical information." To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement. *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). The voluntariness requirement ensures a defendant is not pleading guilty due to improper pressure or coercion. *Trott*, 338 N.W.2d at 251. Whether a plea is voluntary is determined by considering all relevant circumstances. *State v. Danh*, 516 N.W.2d 539, 544 (Minn. 1994) (citing *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 1469 (1970)). As previously noted, appellant was aware of this alleged alibi witness. Accordingly, appellant was aware that, by pleading guilty, he was taking a risk that this individual would later agree to testify on his behalf. Appellant's plea is not rendered involuntary because he did not know the witness would later come forward and offer to testify for appellant.

In sum, we conclude that the postconviction court did not abuse its discretion by denying appellant's petition for postconviction relief because appellant's plea was accurate, voluntary, and intelligent.

**Affirmed.**

12