# YNGVAR OLNESS v. STATE.

186 N. W. (2d) 706.

April 30, 1971—No. 42469.

*C. Paul Jones,* State Public Defender, *Roberta K. Levy* and *Doris O. Huspeni,* Assistant State Public Defenders, for appellant.

*Warren Spannaus,* Attorney General, *James M. Kelley,* Assistant Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Nelson, Otis, Rogosheske, Kelly, and Odden, JJ.

DONALD C. ODDEN, JUSTICE.*

Petitioner entered a plea of guilty to aggravated robbery and conviction was entered thereon. He appeals from an order denying postconviction relief, sought on the ground that his plea was not voluntarily given and on the further ground that he was subjected to lineups without benefit of counsel.

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

On September 18, 1967, petitioner and one Ronald Del Castillo were charged with aggravated robbery. At arraignment in Ramsey County District Court, petitioner entered a plea of not guilty. He was released on bail and while out on bail was arrested and charged with a subsequent robbery which allegedly occurred on October 26, 1967. On November 14, 1967, he pled not guilty to the second robbery charge.

On January 22, 1968, petitioner again appeared in district court on the first robbery charge and moved to change his plea to guilty. He was questioned by the assistant county attorney as to whether he had had a chance to discuss the effect of his guilty plea with his attorney; whether he understood what he had pleaded guilty to; whether he felt he was guilty in his own mind; whether he understood his constitutional right to a jury trial and certain other constitutional rights; and whether he understood that a guilty plea could subject him to a possible term of imprisonment of up to 20 years, a fine of $20,000, or both. Petitioner answered in the affirmative to all of these questions. He was then questioned about the facts surrounding the offense with which he had been charged, and upon his admission to the essential elements constituting the crime, his plea was accepted by the trial court. A presentence investigation was ordered and upon its completion petitioner was sentenced to up to 20 years in the custody of the commissioner of corrections. The second robbery charge was dismissed. The accomplice, Ronald Del Castillo, was sentenced and placed on probation at the same time.

On October 7, 1969, a petition for postconviction relief was filed and a postconviction hearing was held in Ramsey County District Court on December 19, 1969. At the postconviction hearing, petitioner testified that his guilty plea was induced by the promise of his attorney that he would get probation or a year in the workhouse at the most.

Kathleen Heinz, an acquaintance of petitioner, testified that she had overheard a conversation between him and his attorney wherein the attorney stated that if petitioner were to plead guilty,

the second robbery charge would be dropped and the most he would get was a year in the workhouse or probation.

Shirley Olness, petitioner's former wife, testified that she had several conversations with her husband's attorney and that he had told her that "there are deals that can be made," that he and the sentencing judge were "close friends," and further that he was sure the judge would "be very lenient."

Mrs. Gunvar Olness, petitioner's mother, also testified that she had overheard a telephone conversation between her son and his lawyer wherein petitioner asked if by pleading guilty he had a better chance and the lawyer told him he would get a year in the workhouse. "I promise you that * * * because I know [the judge] and you're the last case he will decide * * * because he's going to retire."

Del Castillo testified that the attorney had promised petitioner either probation or a year in the workhouse.

Petitioner's attorney also testified at the postconviction hearing. He testified that he had never made any promises of probation but that he had discussed the possibility of probation or a year in the workhouse in the event of a guilty plea.

Petitioner also testified at the hearing that he had been subjected to several lineups without the benefit of counsel even though he requested the aid of counsel before every lineup.

Upon completion of the postconviction proceedings, the trial court made findings of fact and entered an order denying relief. In such findings of fact, the trial court said:

"While the petitioner earnestly hoped that he might get probation and his attorney, Mr. Nardi, stated that [this disposition] may be possible, the petitioner realized that he was subject to the full punishment of law by the entry of his plea of guilty.

"Whereas it appears that the petitioner was made to participate in certain line-ups in the Saint Paul Police Department the petitioner himself stated that no identification was made of him at any of said line-ups, and therefore any alleged illegality in said

line-ups would be of no significance to the petitioner's plea of guilty and subsequent sentence.

"The petitioner's attorney at the time of his plea and sentence, Mr. Nardi, unequivocally stated that he made no promises to the petitioner that Judge Parks would guarantee probation if he entered a plea of guilty. Mr. Nardi stated that the best that they could hope for would be a year in the workhouse but that no promise was made."

The first issue petitioner presents to this court is whether there is sufficient evidence to support the trial court's finding that his plea was not the result of an unkept promise of leniency made by his privately retained attorney. We hold that the evidence credited by the postconviction court amply sustains this and the other findings and the order.

Petitioner contends, however, that if in fact no promise had been made, the plea nonetheless can be found involuntary if he believed a promise had been made and his belief induced the plea. As support for his position, he cites United States ex rel. Thurmond v. Mancusi (E. D. N. Y.) 275 F. Supp. 508. In that case the court held (275 F. Supp. 515):

"In order to determine whether a guilty plea was made voluntarily, a two step inquiry is necessary. First, we must decide whether improper promises or threats were made by a state official to induce the plea. This finding requires a determination of what observable physical events and conversations took place —in a sense, an 'objective' matter. Second, if we find that there was no such official threat or promise, we must decide whether the defendant believed such a promise or threat had been made and whether his belief 'induced' the plea. The finding and standard in this second stage can be characterized as 'subjective' since an inquiry into the individual defendant's state of mind is involved."

The court went on to say (275 F. Supp. 517):

"A guilty plea induced by a mistaken belief that a binding plea

agreement had been made is invalid even if it is the defendant's own attorney who is responsible for the defendant's mistaken belief. * * * ('even where no specific promise was made, and a guilty plea was entered as a result of a "grave misunderstanding" solely on the part of defense counsel and not participated in by either the prosecution or the judge, the interests of justice required that defendants be relieved of their pleas and the judgments of conviction vacated') * * *.

        *     *     *     *     *

"* * * The state of a man's mind, like most other issues of fact, is decided on the basis of reasonable inferences drawn from the known surrounding facts and circumstances."

In the instant case, from the known surrounding facts and circumstances, the postconviction court could draw a reasonable inference that petitioner's state of mind was such that his plea of guilty was voluntary. Thus, although we decline to discuss the rule in Thurmond at this time and expressly reserve decision as to its applicability in this jurisdiction, even if we were to adopt that rule, the factual determination of the trial court that petitioner realized he was subject to the full punishment of the law by his plea of guilty finds support in the record. Although a plea of guilty may be set aside where an unqualified promise is made as part of a plea bargain and is thereafter dishonored, a plea of guilty should not be set aside merely because the accused has not achieved his unwarranted hope. Schwerm v. State, 288 Minn. 488, 181 N. W. (2d) 867.

The facts of this case, however, compel us, in our role as ultimate arbiter of the standards of attorneys' conduct, to comment on what could in certain instances become a source of ethical difficulty for an individual practitioner. In a criminal case, one decision which must ultimately belong to a client, with certain prominent exceptions, is what plea to enter. A. B. A. Project on Standards for Criminal Justice, Standards Relating to the Defense Function (Tentative Draft 1970) § 5.2(a). In making this decision the accused should have the carefully informed advice

of his lawyer. The advice rendered to the client in the plea-making decision must reflect a professionally considered assessment of the client's predicament. However, in advising his client under such circumstances, the lawyer must be careful not to misstate or misrepresent the facts in a manner which could unfairly persuade one to enter a plea of guilty. The general rule governing a lawyer's conduct as it relates to the accused's decision with respect to his plea is set forth in A. B. A. Project on Standards for Criminal Justice, Standards Relating to the Defense Function (Tentative Draft 1970) § 5.1(b), as follows:

"(b)  It is unprofessional conduct for a lawyer intentionally to understate or overstate the risks, hazards or prospects of the case to exert undue influence on the accused's decision as to his plea."

While this case does not represent an instance in which a plea was unduly influenced through intentional misstatement, counsel here may have failed to exercise all precaution in making clear to the client that his opinion as to the sentence the court might impose was only an opinion, although clearly one educated by experience. The situation is one which should be anticipated by defense counsel who, by recognition of the possibilities involved, should take pains to make clear to the court at the post-plea proceeding that no guarantees have been made to his client by him and that none has been conveyed through him from any other member of the judicial system.

Although the primary purpose of a post-plea-of-guilty examination is to determine whether a plea is voluntarily entered, one of the collateral benefits is absolution of the system's participants of charges of having overreached their bounds in inducing the plea. Because of this, *all* involved parties have an overriding interest in seeing that such examinations are thorough and, if the plea is ultimately accepted, that the proceedings reflect the absence of any unacceptable inducement. All parties to the plea should accordingly strive for a revealing examination rather than be content with one which is only cursory. For a highly

commendable general discussion of this and related subjects, see A. B. A. Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function.

The second ground for petitioner's assertion that his plea was involuntary is his claim that the plea was motivated by a reasonable belief that identification based on a tainted lineup might be introduced in evidence against him if he stood trial.

At the postconviction hearing petitioner stated that he did not believe any identification had been made of him in any lineup. This was the basis for the trial court's finding that any alleged illegality in the lineups was of no significance to petitioner's plea. Under such circumstances we also cannot conceive in what manner the conduct of those lineups could have motivated a plea of guilty.

Affirmed.