# WILLIE BROWN v. STATE.

193 N. W. 2d 613.

January 14, 1972—No. 42587.

*C. Paul Jones*, State Public Defender, and *Roberta K. Levy* and *Rosalie Wahl*, Assistant State Public Defenders, for appellant.

*Warren Spannaus*, Attorney General, *George M. Scott*, County Attorney, and *Henry W. McCarr, Jr.* and *David G. Roston*, Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Murphy, Kelly, and Hachey, JJ.

RONALD E. HACHEY, JUSTICE.*

An appeal from a denial of postconviction relief. Petitioner was arrested on November 18, 1968, and subsequently was charged with kidnapping, false imprisonment, aggravated rape, sexual intercourse with a child, and indecent liberties. Represented by his own counsel, petitioner entered a plea of guilty to the charge of indecent liberties, and the other charges were dropped. Following a presentence investigation, the trial court sentenced petitioner to the custody of the commissioner of corrections for a term not to exceed 5 years.

In December 1969, a petition was filed for postconviction relief wherein petitioner contended that his plea was induced by an allegedly tainted lineup, that the plea was also induced by an alleged promise of probation, and that he was denied effective assistance of counsel. The hearing was had before the same trial court, and the petition was denied. Petitioner was paroled from Stillwater State Prison on May 21, 1971.

At the time petitioner entered a plea of guilty, he admitted taking indecent liberties with a young girl, then age 13. However, at the postconviction hearing he claimed that the girl and another man, whom he did not know, stopped him on the street and asked to use his apartment to which he allegedly consented. Petitioner claimed that he fell asleep in a chair in the apartment, and when he awoke, both parties were gone. He denied ever having anything to do with the girl sexually.

At the postconviction hearing, petitioner also denied that his lawyer had explained the charge before the plea of guilty was entered, and he claimed that his lawyer did not adequately investigate the facts. His attorney has since died; accordingly, no further testimony concerning inadequate representation by counsel was offered. Petitioner further claimed that he entered

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

his plea of guilty because his lawyer promised him probation and because he thought a lineup identification could be used against him. His witnesses at the postconviction hearing testified that there had not been an identification at the lineup. The state witnesses, however, testifed that identification had been made at the lineup.

■ On the basis of his claim that he still did not believe at the time he made his plea that he had been identified in the lineup, it would seem more logical that petitioner would have been inclined to enter a plea of not guilty rather than his guilty plea. The evidence of the lineup (according to his version) could only tend to exonerate him. The identical point was examined in Olness v. State, 290 Minn. 198, 204, 186 N. W. 2d 706, 710 (1971), in which we said:

"At the postconviction hearing petitioner stated that he did not believe any identificatiton had been made of him in any lineup. This was the basis for the trial court's finding that any alleged illegality in the lineups was of no significance to petitioner's plea. Under such circumstances we also cannot conceive in what manner the conduct of those lineups could have motivated a plea of guilty."

In the instant matter, we fail to find any basis for petitioner's claim that his plea of guilty was induced or motivated by an allegedly tainted lineup.

■ Although we have no doubt that petitioner expected that he would get probation, we find no basis for his claim that this was promised to him. His interview by personnel of the probation department prior to sentence is evidence of his attorney's efforts. Nonetheless, at the time of his plea, petitioner underwent a thorough examination by his attorney and by the state during the course of which he freely admitted that he had committed the essential elements of the crime charged; that he had discussed the charge with his attorney; that he was aware of his rights; that no threat or promise had been made; and that the judge alone would be responsible for the sentencing. We find

here, as we did in Coolen v. State, 288 Minn. 44, 49, 179 N. W. 2d 81, 85 (1970), that there was no evidence that petitioner did not understand the nature of the charge and the consequences of his plea.

Other than petitioner's postconviction statement that he was promised probation, there is no proof of any such agreement. We adhere to our holding in Coolen v. State, *supra,* that the contradicting statement of petitioner, standing alone, is insufficient to overturn the voluntariness of his plea of guilty.

■ Upon an examination of the record we find no merit in petitioner's contention that he was denied the effective assistance of counsel. Not only did he express satisfaction with his attorney, but the record indicates an exemplary job was done in getting the prosecuting attorney to drop four of the charges which could have carried a total sentence of 40 years of imprisonment. No doubt petitioner's attorney determined that plea bargaining would be the best course of action. Petitioner now disputes the correctness of that decision.

Trial tactics should not be confused with competence. In McMann v. Richardson, 397 U. S. 759, 769, 90 S. Ct. 1441, 1448, 25 L. ed. 2d 763, 772 (1970), the United States Supreme Court said:

"* * * [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty

must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

"That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."

As we have repeatedly held, there must be a strong showing of incompetence to rebut the presumption that a defendant was properly advised by his attorney. We are not persuaded that petitioner has sustained his burden of showing his representation was perfunctory and casual, rendering the proceedings a sham and pretense, or a farce or mockery of justice. State ex rel. Kons v. Tahash, 281 Minn. 467, 474, 161 N. W. 2d 826, 831 (1968); State v. Waldron, 273 Minn. 57, 139 N. W. 2d 785 (1966); and State v. Jacobs, 292 Minn. 41, 192 N. W. 2d 816 (1971).

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.