STATE of Minnesota, Respondent,

v.

Michael William BUNTROCK, Appellant.

No. C7–95–2347.

Supreme Court of Minnesota.

Jan. 30, 1997.

John M. Stuart, Minn. State Public Defender, Sharon E. Jacks, Asst. State Public Defender, Minneapolis, for appellant.

Michael William Buntrock, St. Cloud, pro se.

Hubert H. Humphrey III, Atty. Gen., Susan Gaertner, Ramsey County Atty., Mark Nathan Lystig, Asst. Ramsey County Atty., St. Paul, for respondent.

## OPINION

STRINGER, Justice.

This case raises the issue of whether a teenager convicted of first degree murder, who wanted to steal the family car to run away with his girlfriend and strangled his mother to death because she might have thwarted his escape, was entitled to an instruction on "heat of passion" manslaughter because he was high on drugs and provoked by his mother's "verbal attack." We are also asked to decide whether there is sufficient evidence to sustain appellant's conviction.

The appellant, Michael Buntrock, is the son of Diane and Ronald Buntrock. Appellant was indicted and tried in Ramsey County District Court on the single charge of first-degree murder in the killing of his

mother, Diane, in violation of Minn.Stat. § 609.185, subd. 1 (1994). At the close of evidence, appellant requested that the court instruct the jury on all levels of murder, first-degree "heat of passion" manslaughter and second-degree "culpable negligence" manslaughter. The appellant also asked for an instruction on the defense of voluntary intoxication. The court held that instructions on first-degree murder, second-degree intentional murder, second-degree felony murder and voluntary intoxication were appropriate, but denied the appellant's other requested instructions, including "heat of passion," first-degree manslaughter under Minn.Stat. § 609.20, subd. 1 (1994).

After deliberating less than a day, the jury found appellant guilty of first-degree murder, second-degree intentional murder and second-degree felony murder and the court sentenced appellant to life in prison. Appellant now appeals, seeking a new trial on the basis that the district court erred when it denied his request to instruct the jury on heat of passion manslaughter. He further argues that the evidence was insufficient to convict him of first degree murder.

Appellant, 18, and his girlfriend, Elizabeth (Beth) Ballstadt, 15, spent most of May 3, 1995, the day before Diane Buntrock's murder, talking at his house and playing basketball with friends and smoking marijuana. That evening they went to appellant's work place and visited friends. Shortly after midnight May 4, 1995, appellant dropped Beth off near her house and the two parted.

When Beth got home, her mother threatened to get a restraining order against appellant because she was "tired of the abuse that [she] saw happening." Beth then snuck out of the house and met appellant sometime after 2 a.m. They walked around the neighborhood and talked about how to get the Buntrocks' Cadillac so they could run away together. How to deal with appellant's mother appears to have been their greatest concern. According to appellant, they developed a plan to kidnap his mother and drop her off so they could get a head start on their getaway. Shortly after 6 a.m., after Mr. Buntrock had left for work, Beth and appellant went to the Buntrock residence at 524 Redwood Lane, New Brighton in Ramsey County to carry out their plan. Beth waited outside. In a statement to investigators after his arrest[1] appellant said that when he got home at about 6:15 a.m. May 4, 1995, his mother told him he would never see his girlfriend again. Upset by his mother's comments, he went downstairs and smoked about four cigarettes to help him think and relax. While smoking, he considered shooting his mother or stabbing her but settled on strangling her.

In his statement, he went on to say he then tied a slipknot in the cord to his boom box, went upstairs, jumped on his mother's shoulders and placed the cord over her head, strangling her for about five minutes. When he noticed blood coming from her mouth, he dragged her to the bathroom, cleaned up the blood with a towel and hid the towel. He then tied his mother up with household cords, wrapped her in a bed sheet and put her in the trunk of the Cadillac. Finally, appellant's statement refers to appellant and Beth visiting Beth's siblings at a bus stop, buying and smoking marijuana and burying the body.

In addition to talking with investigators, appellant also discussed the killing with Beth's mother, Kelly Huettl. In a phone conversation from jail, which was taped on Huettl's answering machine, appellant offered details about his state of mind. He indicated he had intended doing what he did had his mother "gotten in the way" and said it was "quick."

At trial, appellant testified on his own behalf and his version of events dramatically changed. For the first time, he blamed his intoxication level for the crime. Appellant testified that prior to the killing, he ingested two doses of LSD and that the drug's effects

---

1. He and Beth were arrested in Fargo, N.D. on May 5, 1995. His statement, made on Saturday, May 6, 1995, was recorded, transcribed and presented at trial. Appellant also made a written statement:

Went inside house choked mom put her in trunk drove around and left city stayed in Fergus Falls had a memorable nite [sic] and then came to Fargo and got busted now here I sit trying to explain knowing I'm screwed.

were "peaking" when he entered the house. Appellant said that the argument with his mother made him "very, very angry," but he also described the fighting as ordinary. "We had argued often. It was just another argument," he said. On the stand, he denied smoking cigarettes and plotting ways to kill Diane Buntrock. He denied intending to kill his mother and testified that he had previously lied because he wanted to clear Beth. Appellant also testified that while tying his mother's hands and feet, he heard what sounded like breathing noises.[2]

The first issue on appeal is whether the trial court abused its discretion when it refused to instruct the jury on "heat of passion" manslaughter. "The determination of what, if any, lesser offense to submit to the jury lies within the sound discretion of the trial court, but where the evidence warrants an instruction, the trial court must give it." *Bellcourt v. State*, 390 N.W.2d 269, 273 (Minn.1986). An instruction on a lesser charge should be submitted when: (1) the offense in question is an "included" offense; and (2) a rational basis exists for the jury to convict appellant of the lesser offense and acquit him of the greater crime. *State v. Griffin*, 518 N.W.2d 1, 3 (1994) (citing *State v. Leinweber*, 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975)).

Manslaughter in the first degree is a lesser included offense of first degree murder. *Bellcourt*, 390 N.W.2d at 273. A person is guilty of heat of passion manslaughter when: (1) the killing was committed in the heat of passion; and (2) the passion was provoked by acts or words of another that would provoke a person of ordinary self-control in similar circumstances. Minn.Stat. § 609.20, subd. 1 (1994); *State v. Boyce*, 284 Minn. 242, 254, 170 N.W.2d 104, 112 (1969). Therefore, our inquiry is whether appellant was actually provoked and whether his mother's words and acts were sufficient to have provoked a person of ordinary self-control in similar circumstances.

Whether the killing was done in the "heat of passion" is a subjective question. *State v. Shepherd*, 477 N.W.2d 512 (Minn.

1991). "[I]t is the emotional status of the [appellant] which is of primary importance in determining whether a homicide is murder or manslaughter in the first degree." *Boyce*, 284 Minn. at 254–55, 170 N.W.2d at 112. If a defendant is in the heat of passion, "this would cloud his reason and weaken his willpower and therefore, in the eyes of the law, reduce the criminal culpability of the death-producing act." *Boyce*, 284 Minn. at 254, 170 N.W.2d at 112.

Appellant argues that he was acting in the heat of passion when he killed his mother because when he arrived home the morning of the killing, he was "very, very angry" and "assailed by his mother in her characteristic abusive manner." He asserts that his mother was "particularly cruel" in her verbal attacks because she specifically targeted Beth and that the "excessive amounts of LSD and marijuana" in his system at the time of the killing caused him to "snap" when he walked into his mother's room planning only to tie her up.

Appellant's statements contradict many of these claims, however. Appellant himself characterized the argument as typical. Additionally, the appellant's claim that he "snapped" is unsupportable by the record. The only witness to refer to appellant as having snapped was Beth's mother, Kelly Huettl, who used the word when talking on the phone with appellant on May 6, 1995. The relevant portion of the taped conversation is as follows:

HUETTL: "When you went back to the house, did you have, you know, intention to do this to her?"

APPELLANT: "Kind of. If she got in the way, yeah, kind of."

HUETTL: "Something just snapped, huh?"

APPELLANT: "Yeah, I don't know if it was just for the fact that I wanted me and her to get out of her [sic], not get out of here, but I mean just be able to get away easier."

We note that even if defendant was "very, very angry," that fact alone would not have

2. Beth also testified she heard moaning when Diane Buntrock was placed in the trunk.

sustained a "heat of passion" manslaughter conviction. "A mere finding that the defendant was angry, without some evidence of the victim's acts or words, is insufficient to support a finding of 'heat of passion' manslaughter." *State v. Swain,* 269 N.W.2d 707, 715 (Minn.1978).

Appellant's contention that his state of intoxication made him act in the "heat of passion" is, likewise, not supported by the record. He did not testify that the ingestion of the drugs prompted him to be provoked. Rather, he stated only that the strangling was like "a bad dream" and that he "wasn't really in [his] body at the time."

■ Thus we conclude that the trial court did not abuse its discretion in concluding that appellant did not act in the "heat of passion." While this conclusion alone would defeat appellant's first claim of error, we turn briefly to the issue of whether adequate provocation existed. This question involves an objective analysis. *Shepherd,* 477 N.W.2d at 515. The "adequacy of provocation is to be judged from the perspective of a person of ordinary self-control under like circumstances, not from the perspective of a sober person of ordinary self-control under like circumstances." *State v. Shannon,* 514 N.W.2d at 790, 791 (Minn.1994).[3]

■ Our concern here is whether the conduct of the victim would be sufficient to provoke an ordinary person under similar intoxicants in similar circumstances. *Shepherd,* 477 N.W.2d at 515. Accepting as true appellant's claims that Diane Buntrock argued with appellant about his smoking and his girlfriend, and that she followed him around the house, yelling, as she often did, we hold that the trial court did not abuse its discretion in determining these facts to be insufficient to demonstrate adequate provocation. Based on the foregoing analysis, there is no rational basis upon which the jury could convict appellant of "heat of passion" manslaughter and it is, therefore, not necessary for us to decide whether the jury would have had a rational basis for acquitting him of the greater crimes.

■ The other issues raised in this appeal are the sufficiency of the evidence to prove the place of Diane Buntrock's death, the cause of death, premeditation, and because of his intoxicated state, intent. In evaluating the sufficiency of the evidence to support a criminal conviction, "this court must view the evidence in the record in the light most favorable to the jury's verdict and must assume the jury believed the state's witnesses and disbelieved contrary evidence." *State v. Robinson,* 539 N.W.2d 231, 238 (Minn.1995). We review "that evidence and the legitimate inferences drawn from it to determine if they were sufficient to permit the jury, giving due regard for the presumption of innocence, to reasonably conclude the [appellant] was guilty beyond a reasonable doubt of the offense of which he was convicted." *Id.*

■ Appellant, referring to his mother's killing as her "accidental death," asserts he wanted to let his "mother go unharmed" and that she was still alive when they left his house in Ramsey County, as evidenced by the noises he and Beth heard from Diane Buntrock's body after she was strangled. He further argues that his mother suffocated in the trunk and that the cause of death, ligature strangulation, was not adequately proven. The Anoka County coroner, however, testified that Diane Buntrock died from ligature strangulation. Moreover, the place of death, Ramsey County, is consistent with the cause of death being strangulation at the Buntrock home and also a reasonable conclusion for the jury to have made based on Buntrock's confession and the coroner's testimony regarding contrary evidence that a body can make noises after death.

---

3.  We must consider defendant's intoxicated state because the offense occurred prior to the amendment of § 609.20. Minn.Stat. § 609.20 was amended in 1995 to apply to killings committed on or after August 1, 1995. The amended statute provides that "a 'person of ordinary self-control' does not include a person under the influence of intoxicants or a controlled substance." Minn. Stat. § 609.20, subd. 5 (Supp.1995). The crime in question took place May 5, 1995, so the statute is inapplicable and prior caselaw controls. *See Shannon,* 514 N.W.2d at 791 (noting that a "sober person of ordinary self-control" is not proper standard).

The evidence also supports a finding of premeditation. Premeditation "indicates a preexisting reflection and deliberation involving more than a mere intent to kill." *State v. Lloyd*, 345 N.W.2d 240, 245 (1984) (citation omitted). "[It] must be inferred from the totality of the circumstances." *Id.* The premeditation need not involve "extensive planning and calculated deliberation * * *. The requisite 'plan' to commit a first-degree murder can be formulated virtually instantaneously by a killer." *Id.* at 246 (citation omitted). In this case, Ms. Huettl testified that appellant had talked previously about harming and killing his mother. Moreover, the appellant himself said he planned how to kill his mother, smoking four cigarettes while he did so.

The appellant's last claim is that his intoxication prevented him from forming the necessary intent for first degree murder. "As long as the record contains sufficient evidence to support the conclusion reached by the jury on the intoxication issue, that conclusion will not be reversed, despite the existence of some evidence to the contrary." *State v. Wahlberg*, 296 N.W.2d 408, 416 (1980). Appellant did testify that he ingested LSD and marijuana; but his extensive activities in the hours surrounding the killing defeat his claim that intoxication impaired his ability to form intent. *See Wahlberg*, 296 N.W.2d at 416.

The evidence of appellant's guilt presented at trial was overwhelming and demonstrated appellant's chilling calculated actions leading up to the killing. There was more than a reasonable basis for the jury to find defendant guilty of first degree murder.

We affirm the appellant's conviction.