STATE of Minnesota, Respondent,

v.

Derrick Delmar BROCKS, Appellant.

No. C1–97–2168.

Supreme Court of Minnesota.

Dec. 10, 1998.

John M. Stuart, State Public Defender, Mark F. Anderson, Minneapolis, for appellant.

Hubert H. Humphrey, Atty. Gen., Michael O. Freeman, Hennepin County Atty., Beverly J. Benson, Asst. County Atty., Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, J.

Derrick Delmar Brocks was convicted of first-degree murder for the killing of James Nunn in violation of Minn.Stat. 609.185(1) (1996). At the close of the state's case, Brocks requested and received a jury instruction on self-defense. The trial court also instructed on the lesser-included offense of second-degree murder (intentional but not premeditated). On appeal, Brocks argues that the trial court erred by denying his request that the jury also be instructed on the lesser-included offense of manslaughter in the first degree (heat of passion). Brocks also argues, by supplemental pro se brief, that the evidence was not sufficient to permit the jury to find that the murder was premeditated, and that he received ineffective assistance of counsel. We affirm.

On the evening of August 17, 1996, Brocks shot Nunn seven times at close range, killing him. Earlier that evening, Brocks had invited several friends and relatives to his apartment for a party. Before the party, as he was returning from the liquor store, Brocks met Nunn on the street outside his apartment building. Brocks and Nunn exchanged "war stories" about their experiences with gangs and guns on the streets of Minneapolis and Detroit. The conversation was friendly and, before inviting Nunn into his apartment for the party, Brocks fired several shots into the air from his nine-millimeter handgun. The gun jammed and, once inside the apartment, Brocks reloaded the weapon, placing a bullet in the chamber and cocking the gun so it was ready to fire. Brocks explained at trial that, because he was a drug dealer, he carried a loaded handgun at all times.

Two women were also invited to the party. One of the women, Greshawn, had a child with Brocks, and the other, Crystal Johnson, had been dating Brocks for eight or nine months. Neither Greshawn nor Johnson knew that the other was romantically involved with Brocks. Soon after the party started, Brocks was on the couch talking to Johnson when Greshawn walked by and, according to Brocks, gave him a look that indicated she was upset. Greshawn continued on into one of the adjoining bedrooms and Brocks followed her. Once inside the room Greshawn swung at Brocks; Brocks grabbed her, threw her on the bed and jumped on top of her in an attempt to calm her down. A few minutes later, Johnson opened the door and, without looking inside, called to Brocks. Brocks ignored Johnson and Greshawn began to laugh. Upset, Johnson asked Nunn, whom she had not met before the party, to give her a ride home. Nunn drove Johnson to her apartment and the two of them went for a walk.

After learning that Johnson had left with Nunn, Brocks talked with his cousin on the front porch and then decided to get a beer and drive over to Johnson's apartment, several miles away. Brocks testified that he was neither mad at Johnson, nor jealous of Nunn, and that he did not intend to harm anyone. About a block before reaching Johnson's home, Brocks spotted Johnson and Nunn walking. Brocks stopped in the middle of the street a short distance away from them and turned down the lights of his van. He got out of the van, leaving the door open and the motor running.

Johnson's and Brocks' testimony conflict as to what happened next. According to Johnson, Brocks, gun in hand, walked toward her and Nunn. Johnson stood in front of Nunn and told Brocks that Nunn had only given her a ride home. Brocks did not answer Johnson but instead looked directly at Nunn. Nunn pushed Johnson aside, in an effort to protect her, and then backed away

as Brocks began firing at him. Nunn fell to the ground and Brocks stood over him and continued to fire the gun from close range.[1] After pointing his gun at Johnson and yelling, "Crystal, don't ever play me," Brocks fled in his van.

Brocks' version of events differs somewhat from Johnson's version. According to Brocks, before getting out of the van he called to Johnson and she replied, calling him, "no good and * * * all kinds of whores or whatever you want to say, things of that nature." Angered by Johnson's comments, Brocks got out of the van and walked toward Johnson and Nunn, locking eyes with Nunn. Brocks threw his hands in the air and asked Johnson: "what's up with you?" It was Nunn who answered, however, stating, "it ain't even like that." Johnson jumped in front of Nunn, and Brocks said, "don't tell me how to check my girl." Nunn then pushed Johnson to the side and came toward Brocks in a boxing position. Brocks pulled out his gun and struck Nunn in the face with it as Nunn charged toward him. Stunned, Nunn charged again. Brocks, fearing that Nunn might · have a gun or might wrestle Brocks' gun away from him, opened fire. Although he admitted that he had not seen Nunn carrying a weapon at the party that night, Brocks said he felt that "either it's him or me." Brocks later explained that he shot Nunn to protect himself. As he fled, Brocks told Johnson, "don't ever play me." The following day Brocks left to complete a drug deal in Detroit. He was arrested there on September 4, 1996.

Before final arguments, Brocks asked that the trial court instruct the jury on the offense of manslaughter in the first degree (heat of passion) as a lesser-included offense. The trial court, after hearing arguments from each side, denied the request, citing Brocks' own testimony as evidence he did not act in the heat of passion. The trial court explained:

the defendant denied that he was acting in any kind of heat of passion or in a jealous rage. Only Crystal Johnson speculated that that could have been a cause of the shooting, so there really isn't a factual basis for it. No words were spoken in this case. * * * In this case, there were not the kinds of acts that provoke a person of ordinary control to lose it and to—to lose self-control. Defendant's claim is that he was acting in self-defense, not that his reasoning was clouded, or that his will power was weakened by his emotions because of the circumstances.

## I.

■ The first issue we address is whether the trial court abused its discretion by denying Brocks' request that the jury be instructed on manslaughter in the first degree (heat of passion) as a lesser-included offense.

■ A defendant "may be convicted of either the crime charged or an included offense, but not both." Minn.Stat. § 609.04, subd. 1 (1996). Determining if a lesser-included offense should be submitted to the jury "lies within the sound discretion of the trial court, * * * but where the evidence warrants an instruction, the trial court must give it." *Bellcourt v. State*, 390 N.W.2d 269, 273 (Minn.1986) (citations omitted). A trial court should submit an instruction on a lesser-included offense when: (1) the offense in question is an "included" offense; and (2) a rational basis exists for the jury to convict the defendant of the lesser-included offense and acquit the defendant of the greater crime. *See State v. Griffin*, 518 N.W.2d 1, 3 (Minn.1994) (citing *State v. Leinweber*, 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975)). "[T]he fact that the defendant's own testimony does not support the theory that he is guilty only of a lesser offense, does not preclude submission if the record on the whole provides a rational basis for acquitting the defendant of the charged offense and

---

1. Nunn sustained gunshot wounds to: (1) the right forehead, a graze wound; (2) the left side of the head extending down into the neck, through the right lung and into the liver; (3) the left cheek extending into the front of the skull and terminating on the right side of the head at the base of the skull; (4) the upper left chest region travelling through the lungs and heart and exiting on the right back; (5) the back; (6) the front of the abdomen, terminating within the right abdominal wall; and (7) the left side of the chest, exiting on the right side of the body.

convicting him of the lesser offense." *Griffin*, 518 N.W.2d at 3.

The parties do not dispute that manslaughter in the first degree (heat of passion) (Minn.Stat. § 609.20(1) (1996)) is a lesser-included offense of first-degree murder (Minn.Stat. § 609.185(1) (1996)). *See Bellcourt*, 390 N.W.2d at 273; *see also* Minn.Stat. § 609.04 (1996) (defining included offenses). Thus, the only issue before the trial court was whether the evidence provided a rational basis for the jury to convict Brocks of manslaughter in the first degree (heat of passion) and acquit him of the greater crimes.

■ A person is guilty of manslaughter in the first degree (heat of passion) when: (1) the killing was committed in the heat of passion; and (2) the passion was provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances. *See* Minn.Stat. § 609.20(1); *State v. Boyce*, 284 Minn. 242, 254, 170 N.W.2d 104, 112 (1969). For the jury to convict Brocks of manslaughter in the first degree (heat of passion), the evidence would have to provide a rational basis for the jury to find that: (1) Brocks killed Nunn in the heat of passion; and (2) Brocks' passion was provoked by words or acts that would provoke a person of ordinary self-control under similar circumstances. *See State v. Buntrock*, 560 N.W.2d 383, 386 (Minn.1997).

■ To determine whether the killing was done in the heat of passion requires a subjective analysis. *See State v. Shepherd*, 477 N.W.2d 512, 515 (Minn.1991). As this court stated in *Boyce*, "it is the emotional status of the [appellant] which is of primary importance in determining whether a homicide is murder or manslaughter in the first degree." *Boyce*, 284 Minn. at 254–55, 170 N.W.2d at 112. Acting in the heat of passion clouds a defendant's "reason and weaken[s] his willpower and therefore, in the eyes of the law, reduce[s] the criminal culpability of the death-producing act." *Boyce*, 284 Minn. at 254, 170 N.W.2d at 112. Anger alone, however, is not heat of passion. *See id.; see also State v. Swain*, 269 N.W.2d 707, 715 (Minn.1978) (stating that "[a] mere finding that the defendant was angry, without some evidence of a victim's acts or words, is insuf-

ficient to support a finding of 'heat of passion' manslaughter.").

■ To determine whether there were acts sufficient to provoke a person of ordinary self-control under like circumstances requires an objective analysis. *See Buntrock*, 560 N.W.2d at 387. The adequacy of the provocation is judged from the perspective of a person of ordinary self-control under like circumstances. *See id.* We look to the record as a whole to make these determinations. *See Griffin*, 518 N.W.2d at 3 (citing *State v. Shannon*, 514 N.W.2d 790, 792 (Minn.1994); *Leinweber*, 303 Minn. at 417, 228 N.W.2d at 123).

Brocks' argument that he killed Nunn in the heat of passion is refuted by his own testimony that he was neither mad at Johnson, nor jealous of Nunn. Careful review of the entire record reveals that Brocks' attorney was the only person to suggest that Brocks might have acted in the heat of passion. During his cross-examination of Johnson, Brocks' attorney asked: "What you're really saying here is that Mr. Brocks shot Mr. Nunn in a jealous rage; is that right?" Johnson answered: "I don't know why he shot him, but that's the only thing I can see." This answer, as the trial court noted, was speculative and without a factual basis in the record. The remainder of the record is devoid of any credible evidence that would suggest that Brocks acted in the heat of passion. Moreover, a person of ordinary self-control would not react with violence when placed in Brocks' situation, let alone kill someone by firing seven shots at close range.

We are satisfied, after careful review of Brocks' version of the killing and the record as a whole, that the evidence in this case does not provide a rational basis for a jury to find that Brocks killed Nunn in the heat of passion or that there were words or acts that would have provoked a person of ordinary self-control to act as Brocks did. The trial court did not abuse its discretion by refusing to submit manslaughter in the first degree (heat of passion) as a lesser-included offense.

## II.

■ Brocks next argues, by supplemental pro se brief, that there was insuffi-

cient evidence to permit the jury to find that the murder was premeditated. When reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the verdict and assume that the jury believed the state's witnesses and disbelieved contrary evidence. *See State v. Moore*, 481 N.W.2d 355, 360 (Minn.1992) (citing *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn.1980)). We review "whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *Moore*, 481 N.W.2d at 360 (citing *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981)).

■■■ A person is guilty of first-degree murder if he "causes the death of a human being with premeditation and with intent to effect the death of the person or of another." Minn.Stat. § 609.185(1). Premeditation means to "consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Minn.Stat. § 609.18 (1996). The requisite plan to commit a first-degree murder can be formulated virtually instantaneously by a killer. *See Buntrock*, 560 N.W.2d at 388 (quoting *State v. Lloyd*, 345 N.W.2d 240, 246 (Minn.1984)). Premeditation is a state of mind generally proved circumstantially by drawing inferences from a defendant's words and actions in light of the totality of the circumstances. *See State v. Andrews*, 388 N.W.2d 723, 728 (Minn.1986) (citations omitted). Multiple gunshot wounds and the brutality of the killing may be evidence of premeditation. *See State v. Cooper*, 561 N.W.2d 175, 180 (Minn. 1997) (citations omitted). The jury is in the best position to evaluate the credibility of witnesses and weigh the evidence, and therefore its verdict must be given due deference. *See State v. Anderson*, 379 N.W.2d 70, 75 (Minn.1985); *see also Moore*, 481 N.W.2d at 360.

Assuming the jury believed the testimony of the state's witnesses and disbelieved the testimony of Brocks, it could reasonably have concluded that Brocks drove several miles to Johnson's apartment carrying a loaded gun. He saw Johnson and Nunn walking down the street, stopped his van in the middle of the street, dimmed the lights, placed his beer in the cup holder, and got out of the vehicle while leaving the motor running with the driver's door open. Brocks brandished his weapon while walking towards Johnson and Nunn, struck Nunn in the face with it and began shooting him. Brocks fired seven bullets into Nunn, all while the gun was within close range of Nunn, and at least twice while Nunn was lying on the ground fatally wounded. Brocks immediately ran to his van, pointed his gun at Johnson and stated, "Crystal, don't ever play me," as he fled the scene. Based upon the evidence, and the inferences to be drawn therefrom, the jury could reasonably conclude, as it did, that Brocks intentionally caused the death of Nunn with premeditation.

### III.

Brocks next argues, again by supplemental pro se brief, that he received ineffective assistance of counsel. Effective assistance of counsel is an integral component of the right to a fair trial, guaranteed by the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A defendant who claims ineffective assistance of counsel, however, must prove that counsel's performance was deficient and that this deficient performance deprived defendant of a fair trial. *See Fox v. State*, 474 N.W.2d 821, 826 (Minn.1991) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

Whether counsel's performance was deficient is measured by an objective standard of reasonableness. *See Hodgson v. State*, 540 N.W.2d 515, 518 (Minn.1995). There is a strong presumption that a counsel's performance falls within the wide range of "reasonable professional assistance." *State v. Jones*, 392 N.W.2d 224, 236 (Minn.1986). Even if a defendant is able to prove that his counsel's representation was constitutionally defective, the defendant must also show there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn.1992)

(quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

In reviewing counsel's performance at trial, we have recognized that counsel must have the discretion and flexibility to devise a trial strategy that best serves the client. *See Jones,* 392 N.W.2d at 236; *see also State v. Gobely,* 366 N.W.2d 600, 603 (Minn.1985); *State v. Berry,* 309 N.W.2d 777, 785 (Minn. 1981) (stating that a disagreement over trial strategy does not constitute ineffective assistance of counsel); *Brown v. State,* 292 Minn. 174, 177, 193 N.W.2d 613, 616 (1972) (stating that trial tactics are not to be confused with competence). It appears from the record that the strategies employed by Brocks' counsel were "reasonable in light of all the circumstances." *Dent v. State,* 441 N.W.2d 497, 500 (Minn.1989) (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2066).

 Brocks first argues that his counsel undermined his case by advising him to discuss his involvement in drug dealing. To refute the inference that carrying a loaded gun to a site and then killing someone suggests premeditation, Brocks' counsel explained that Brocks, a drug dealer, always carried a loaded gun to protect himself. Absent this explanation, the presence of a loaded handgun suggested that the killing was premeditated.

 Next Brocks argues that his counsel undermined his case by advising him to claim self-defense, knowing that self-defense would be unsuccessful and that it would be used against him by the prosecutor. It appears, however, that counsel had little choice but to raise the claim of self-defense. Brocks testified that when Nunn came at him he pulled his gun and struck Nunn in the face with it in order to protect himself. He further testified that Nunn was stunned briefly but then charged at him again and that he opened fire because he feared Nunn might have a gun or might wrestle the gun away from him. According to Brocks, he shot Nunn seven times in order to protect himself. Considering Brocks' version of the shooting, the use of a self-defense strategy was, at the very least, reasonable.

 Brocks also argues that he received ineffective assistance of counsel because his counsel failed to cross-examine several of the state's witnesses. Brocks' counsel did not cross-examine the victim's mother who provided basic background information concerning her son. His counsel might well have concluded that the jury would be alienated if he cross-examined the grieving mother about information not critical to the case. It is also understandable that his counsel chose not to cross-examine several police officers who testified. Each officer either testified about the crime scene, the bullets, casings and cartridges, or Brocks' subsequent arrest. There was nothing about the officers' crime scene testimony that contradicted Brocks' version of the shooting. Brocks admitted that the bullets, casings and cartridges were his, and the officer who arrested Brocks in Michigan simply testified that he arrested Brocks, then impounded and searched his vehicle and found no weapons. Brocks' counsel could have reasonably concluded that nothing would have been gained by cross-examining any of these witnesses. *See King v. State,* 562 N.W.2d 791, 796 (Minn.1997) (stating that it is "a tactical decision not to dispute" witness testimony).

 Brocks' final claim is that his counsel had a conflict of interest because, in the past, he had worked with and been a friend to the victim's father. The Sixth Amendment right to counsel includes a "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). This right "is not limited to cases involving joint representation of co-defendants * * * but extends to any situation in which a defendant's counsel owes conflicting duties to that defendant and some other third person." *United States v. Soto Hernandez,* 849 F.2d 1325, 1328 (10th Cir.1988).

Because Brocks raised no objection at trial regarding a conflict of interest, he must demonstrate that his counsel "actively represented conflicting interests" and that this conflict "adversely affected [his counsel's] performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718-19, 64 L.Ed.2d 333 (1980). Brocks asserts that his counsel

had some sort of allegiance to the victim's father because of their prior relationship. However, Brocks neither demonstrates that his counsel actively represented conflicting interests, nor does he demonstrate that the supposed conflict adversely affected his counsel's performance.

The nature of the relationship between Brocks' counsel and Nunn's father is unclear, but it does not appear to be that of attorney-client. The victim's father stated at sentencing that he had "worked in the community as a community service worker * * * [and had] worked with [counsel] at one time, and I think a couple times he helped me out at a time—point in my life, and I turned my life around." This evidence does not indicate that Brocks' counsel and Nunn's father had a current attorney-client relationship, nor does it indicate that they ever had an attorney-client relationship. It simply indicates that at one time they knew each other and that Brocks' counsel helped the victim's father during a time of need.

Finally, the father's statement suggests that any relationship he had with Brocks' counsel did not affect the representation of Brocks. The victim's father stated that he understood "that every defendant has an opportunity to have a fair and equal trial, and someone to represent him[, but] I thought some things in the trial—I thought they were unnecessary, but then again [counsel is] doing the job he was appointed to do * * * [s]o I'm not going to hold any grudges against that, even though I was upset about a lot of things."

After reviewing the complete record of this case, there is no evidence that defense counsel provided Brocks with ineffective assistance of counsel.

Affirmed.