*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0153**

State of Minnesota,
Respondent,

vs.

Rosalyn Mary Brooks,
Appellant.

**Filed January 17, 2017
Affirmed
Larkin, Judge**

Ramsey County District Court
File No. 62-CR-15-2258

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)


        Considered and decided by Larkin, Presiding Judge; Peterson, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges her conviction of engaging in the business of concealing criminal proceeds and the district court's assignment of a severity level of six to that offense for sentencing purposes. We affirm.

## FACTS

In March 2015, respondent State of Minnesota charged appellant Rosalyn Mary Brooks with engaging in the business of concealing criminal proceeds. The complaint alleged that Brooks operated Papa Dimitri's Classic Pizza and Ice Cream in St. Paul with her son, Ryan Dimitri Brooks (Ryan), and that the restaurant was used to conceal the proceeds of Ryan's marijuana sales.

The case was tried to a jury over four days, and the jury found Brooks guilty as charged. Because that offense is not ranked under the Minnesota Sentencing Guidelines, the district court assigned a severity level of six for sentencing purposes. The district court stayed imposition of sentence, placed Brooks on probation for up to ten years, and ordered her to serve 60 days in jail. This appeal follows.

## DECISION

## I.

Brooks contends that the evidence was insufficient to sustain her conviction. When considering an insufficient-evidence claim, an appellate court carefully analyzes the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach their verdict. *State v. Webb*, 440 N.W.2d 426,

430 (Minn. 1989). The appellate court "assume[s] that the jury believed the state's witnesses and disbelieved contrary evidence." *State v. Brocks*, 587 N.W.2d 37, 42 (Minn. 1998). The court will not disturb the jury's verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Brooks was charged under Minn. Stat. § 609.497, subd. 1 (2012), which provides that

> A person is guilty of a felony and may be sentenced under subdivision 2 if the person knowingly initiates, organizes, plans, finances, directs, manages, supervises, or otherwise engages in a business that has as a primary or secondary purpose concealing money or property that was gained as a direct result of the commission of a felony under [chapter 609] or chapter 152 . . . .

Brooks does not dispute that the trial evidence was sufficient to prove that Ryan was involved in the sale of marijuana and that cash revenue from that enterprise was routinely deposited into the restaurant's bank account. Nor does she dispute that trial evidence was sufficient to prove that Brooks operated the restaurant. Instead, Brooks focuses on the knowledge requirement. Brooks argues that "[t]he state's circumstantial evidence was insufficient to prove beyond a reasonable doubt that [she] knew that 'Papa Dimitri's' bank account was being used to conceal the proceeds of criminal activity." In a supplemental pro se brief, Brooks similarly argues that "[t]he evidence presented at trial shows no knowledge by [her] that money placed in the pizza shop checking account was from drug sales."

3

The state relied on circumstantial evidence to prove Brooks's knowledge. When a defendant challenges the sufficiency of circumstantial evidence, an appellate court applies a two-step analysis. *State v. Anderson*, 789 N.W.2d 227, 241 (Minn. 2010). First, the court "must identify the circumstances proved, giving deference to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *Id.* at 241-42 (quotation omitted). Second, the court "independently examine[s] the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt." *Id.* at 242 (quotation omitted). The court determines "whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotation omitted). An alternative hypothesis does not justify granting relief if the hypothesis is "not plausible or supported by the evidence." *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998).

The trial evidence established the following circumstances. Ryan was not employed outside of the restaurant. Ryan visited the restaurant only occasionally. Brooks ran the restaurant's day-to-day operations. Brooks told law enforcement that she was a co-owner of the restaurant and that she had cashed out her retirement savings to start the business. Business records for the restaurant were located near the restaurant's cash register, including bills and receipts for restaurant supplies. Brooks signed checks on behalf of the restaurant and paid the restaurant's bills. The restaurant's commercial landlord normally contacted Brooks when there were lease issues.

The restaurant was open from approximately 4:00 p.m. to 9:00 p.m. daily. During an 18-day surveillance period, the restaurant sold approximately 23 to 25 pizzas. The restaurant had one to two customers, and Brooks made one to two deliveries, each day of the surveillance period. From January 2014 through the end of October 2014, the restaurant had approximately $8,000 in sales and $32,000 in expenses. During that same period, approximately $101,000 was deposited into the restaurant's bank account. Most of the deposits were in cash.

When police executed a search warrant at the restaurant on December 30, 2014, the inside of the restaurant was dirty, the soda dispenser did not work, and there was a "very low volume of product" inside the restaurant's coolers and storage area. A sign at the cash register indicated that the restaurant only accepted cash. The restaurant's menus advertised lunch specials from "11:00 a.m. to 3:00 p.m.," even though the restaurant did not open until 3:00 or 4:00 p.m. A neighboring business owner talked with Brooks about the menus "stat[ing] hours that they weren't keeping." The neighbor observed potential customers trying to enter the restaurant during the advertised hours and walking away disgruntled. The neighbor advised Brooks that she should not advertise that the restaurant would be open when it was actually closed.

In October 2013, the U.S. Postal Service intercepted a package mailed to "Classic Pizza" at the restaurant's address. A postal inspector opened the package pursuant to a search warrant and found a metal safe containing three bags of marijuana weighing about 2.37 pounds. On December 30, 2014, police executed a search warrant at Brooks's residence and found two handguns, three small bags of marijuana, and a safe containing

5

marijuana residue. The handguns were in a wooden box just outside of the kitchen. Ryan's DNA was found on one of the handguns. The bags of marijuana were in a cabinet in a laundry area and in a dresser next to a day bed.

On January 28, 2015, Brooks spoke with Ryan while he was in custody related to the underlying circumstances of this case. During the phone conversation, Brooks said multiple times that she "want[ed] out." Brooks also stated "[y]ou're not makin' enough money to pay the bills." After Brooks mentioned the police searching the restaurant, Ryan responded, "We got raided for no reason. There was nothin' there. So as long as you shut your d--n mouth of work, we're good! Don't be stupid!" When Brooks brought up a check that the police seized during the search, Ryan replied, "You, ah, you can't talk on this f----n' phone! Are you stupid?"

These circumstances are consistent with the jury's finding that Brooks was guilty of engaging in the business of concealing criminal proceeds and inconsistent with any rational hypothesis other than guilt. Brooks signed checks to pay the restaurant's bills, and she was highly involved in the day-to-day operations of the restaurant. She therefore was aware of the significant disparity between the restaurant's revenues and expenses. Brooks argues that "[e]ven knowing that the restaurant had been running a deficit, [she] may nevertheless have believed that the business was able to remain solvent for reasons completely unrelated to her son's own criminal enterprise." But Brooks does not point to any evidence that would support a belief that the funds used to keep the restaurant solvent were coming from a legal source. And it is simply not plausible that Brooks believed that Ryan could fund

6

the restaurant's expenses through legitimate means when the restaurant was his sole place of employment.

Because the evidence was sufficient for the jury to conclude, beyond a reasonable doubt, that Brooks was guilty of engaging in the business of concealing criminal proceeds, we do not disturb the verdict.

## II.

Engaging in the business of concealing criminal proceeds is designated as an unranked offense under the Minnesota Sentencing Guidelines. Minn. Sent. Guidelines 5.A (2012). When a district court sentences an offense that is designated as an unranked offense, the court "must assign an appropriate severity level for the offense and specify on the record why that particular level was assigned." Minn. Sent. Guidelines 2.A.4 (2012). Brooks argues that the district court abused its discretion in assigning a severity level of six to her offense of engaging in the business of concealing criminal proceeds. An appellate court reviews a district court's severity-level determination for an abuse of discretion. *State v. Bertsch*, 707 N.W.2d 660, 666 (Minn. 2006).

In assigning a severity level of six, the district court emphasized that the maximum statutory penalty for engaging in the business of concealing criminal proceeds is 20 years. *See* Minn. Stat. § 609.497, subd. 2 (2012) (providing that a person convicted of engaging in the business of concealing criminal proceeds "may be sentenced to imprisonment for not more than 20 years"). The district court explained:

> This is hardly a sophisticated business operation. It was pretty clumsily executed. But my assumption is that the Legislature intended for this to be a more serious crime than the other

7

crimes that you mentioned on these other cases. And I could have gone to a level 7, which would have been still below the line. I could have gone above the line because there are a lot of 20-year maximums that are admits to prison. But I thought that given the circumstances, and all the information I had, that 6 made sense.

Caselaw indicates that the district court's consideration of statutory penalties was appropriate. For example, in *State v. Kenard*, the supreme court concluded that the legislature's establishment of a higher maximum sentence under one provision of a statute than under another showed its intent to treat convictions under the former provision more seriously. 606 N.W.2d 440, 444 (Minn. 2000). The supreme court stated that the decision to provide a higher statutory maximum for convictions under the former provision "may dictate a higher severity level" for a conviction under that provision. *Id.*

In *State v. Huynh*, the supreme court concluded that it was not an abuse of discretion for the district court to assign a severity level of eight to the offense of racketeering. 519 N.W.2d 191, 198 (Minn. 1994). The supreme court noted that "the penalties for racketeering are similar to the penalties for offenses ranked by the [sentencing guidelines] as severity level VIII offenses, such as first degree assault," citing the 20-year statutory maximum prison sentences for those two offenses. *Id.* The supreme court reasoned that "[t]he legislature clearly intended to punish severely those persons who engage in racketeering." *Id.*

In sum, when assigning a severity level to an unranked offense, statutory penalties are a relevant consideration. The district court therefore appropriately considered the severity levels assigned to ranked offenses with statutory penalties similar to the statutory

penalty for Brooks's offense. And the district court reasonably assigned a severity level of six to Brooks's offense, noting that six is lower than the severity levels assigned to ranked offenses with similar statutory penalties.

A district court may also consider the following factors when assigning a severity level to an unranked offense: (1) "the gravity of the specific conduct underlying the unranked offense," (2) "the severity level assigned to any ranked offense with elements that are similar to the elements of the unranked offense," (3) "the conduct of and severity level assigned to other offenders for the same unranked offense," and (4) "the severity level assigned to other offenders engaged in similar conduct." Minn. Sent. Guidelines 2.A.4 (2012). No single factor is controlling and the list of factors is not meant to be exhaustive. *Kenard*, 606 N.W.2d at 443.

As to these factors, the state submitted district court records regarding four unrelated defendants who had been convicted of the crime of concealing criminal proceeds. A person is guilty of the crime of concealing criminal proceeds if the person "(1) conducts a transaction involving a monetary instrument or instruments with a value exceeding $5,000; and (2) knows or has reason to know that the monetary instrument or instruments represent the proceeds of, or are derived from the proceeds of, the commission of a felony . . . ." Minn. Stat. § 609.496, subd. 1 (2016).

In *State v. Robinson* (85-K7-98-84), the defendant mailed a package containing $9,500 in drug proceeds to a recipient in Washington. The district court assigned a severity level of three to the offense. In *State v. Schafer* (43-K6-99-344), the defendant transferred a safe containing $50,000 in drug proceeds to a third party to post bail for the defendant's

9

boyfriend. The district court assigned a severity level of three to the offense. In *State v. Guion* (62-CR-14-2369), a drug dealer's girlfriend used the drug-sale proceeds to purchase a vehicle and a home, and withdrew funds from her bank accounts to conceal drug proceeds from law enforcement. The district court assigned a severity level of five to that offense pursuant to a plea agreement. In *State v. Desender* (27-CR-97-47653), the defendant embezzled money from his employer over multiple years and laundered the money through various means, including depositing it in his parents' bank accounts. The district court in that case assigned a severity level of six.

The state noted that the legislature established a 20-year maximum sentence for engaging in the business of concealing criminal proceeds, whereas it established a ten-year maximum sentence for the offense of concealing criminal proceeds and argued that "[t]his is a clear indication that [the legislature] intended to punish [the] person that engages in [the former] conduct more severely." *Compare* Minn. Stat. § 609.496, subd. 2, *with* Minn. Stat. § 609.497, subd. 2 (2016). The state further argued that this case is most like the *Desender* case because the defendant in that case embezzled money and concealed it over the course of several years, which the state contended "was much more of a sophisticated offense similar to what was happening here in this particular case." The state also argued that the gravity of the conduct in this case was more severe because the U.S. Postal Service was used in the operation and there was evidence that drugs were delivered under the guise of pizza deliveries.

Brooks recommended the district court assign a severity level of three. She argued that her conduct was not sophisticated because the state merely proved that Ryan deposited

proceeds from his drug sales into the restaurant's account and that Brooks was aware of it. Brooks argued that "there was not a single piece of evidence that was ever introduced that she engaged in a single drug transaction, which some of the other folks [in the cases provided by the state] clearly did, [or] that she profited from it at all." Brooks contrasted the facts of this case with those in *Desender,* noting that the defendant in that case was "a CFO stealing thousands of dollars to pay personal taxes, to pay a myriad of other responsibilities and living a lavish lifestyle," whereas Brooks worked and supported herself.

The state's district court case examples are not entirely helpful. First, the cases involve the crime of concealing criminal proceeds, which is also an unranked offense. *See* Minn. Sent. Guidelines 2.A.4. We are not aware of any ranked offense with elements that are similar to the elements of engaging in the business of concealing criminal proceeds. Nor are we aware of any cases involving assignment of a severity level to the offense of engaging in the business of concealing criminal proceeds. Moreover, because the offense of concealing criminal proceeds requires only a single transaction, that offense is appreciably different from the offense of engaging in an ongoing business that has a primary or secondary purpose of concealing criminal proceeds. *Compare* Minn. Stat. § 609.496, subd. 1, *with* Minn. Stat. § 609.497, subd. 1. Thus, the single criminal transactions in *Robinson* and *Schafer* are not similar to the ongoing criminal conduct in this case.

Brooks's conduct—knowingly operating a restaurant that was being used to conceal drug proceeds—is most like the ongoing concealment of embezzled funds in *Desender*,

11

where the district court assigned a severity level of six. To the extent that *Desender* is instructive regarding the severity level assigned to an offender engaged in similar conduct, it suggests that the district court did not abuse its discretion. Moreover, the district court's assignment of a severity level higher than the severity level assigned in *Robinson* and *Schafer* is reasonable given that those cases involved only one criminal transaction and the maximum statutory penalties for the offense of concealing criminal proceeds and engaging in the business of concealing criminal proceeds indicate that the legislature intended a harsher consequence for the latter offense.

Lastly, although the district court did not specifically discuss the gravity-of-the-offense factor, that factor supports the district court's decision. Brooks was highly involved in the operation and management of the restaurant that was used to conceal proceeds of drug sales over an extended period of time. Brooks ran the restaurant's day-to-day operations for at least three years, signed checks on behalf of the restaurant, paid the restaurant's bills, and acted as the restaurant's contact person regarding its commercial lease. Brooks also told law enforcement that she was a co-owner of the restaurant and had cashed out her retirement savings to start the business. The evidence shows that from January 2013 through November 2014, $207,796.45 was deposited in the restaurant's bank account, but only a small fraction of that amount originated from the restaurant's sales. In sum, the record suggests that Brooks's operation of the restaurant enabled Ryan to sell a significant amount of marijuana over a significant period of time.

Under the circumstances, the district court did not abuse its discretion by assigning a severity level of six to Brooks's offense of engaging in the business of concealing criminal proceeds.

**Affirmed.**